Thank you, Your Honors. May it please the Court, my name is William Markham. I represent the appellant, Jensen Enterprises. Jensen's evidence reasonably raises triable issues of fact as to the following points. There was an established line of commerce under which property developers in California and Nevada would purchase a product called and resell the vaults to AT&T, obtaining from AT&T such reimbursement as they could. That was an established course of conduct in this industry of property development and the connection of property developments to landmine networks in California and Nevada. Counsel, let me ask a question that kind of, for me, sets the tone of this case. AT&T is a monopoly, but it's a legal monopoly, and it decides that it wants to buy a certain part of its system from X. That's what's happening here, isn't that correct? I respectfully disagree, Your Honor. AT&T had the prerogative to buy its AT&T vaults from whichever supplier it wished to make the purchase. But AT&T wasn't buying the AT&T vaults. The property developers were making the purchases and then reselling the AT&T vaults. The definition of a purchaser is the one who pays the purchase price. Can you lift the mic just a little? Is that better? Yes. Thank you. Initially, AT&T argued that, in fact, it was the purchaser and that the developers merely acted as its de facto purchasing agents. The evidence showed conclusively that AT&T did not reimburse the purchasers according to what the AT&T did not reimburse the developers according to what the developers paid, but rather reimbursed them according to its own internal policy of reimbursing according to its own current cost. How did that hurt Jensen? If AT&T was, let's say, illegally under California regulatory provisions, not reimbursing the developers and was paying them $8 instead of $10 for the vaults, how did that hurt Jensen? Thank you, Your Honor. That's an excellent question. And the answer is that AT&T never would have obtained the price list from Old Castle that it used to justify its under-reimbursements, save that in exchange, it agreed to force all of the purchasers to make this purchase only from Old Castle. What really happened here is you had two defendants. Go over that carefully. AT&T could not have made the deal with Old Castle as to the price for the vaults unless it was going to be cheating the developers on reimbursement. Is that what you're saying? Not exactly, Your Honor. AT&T and Old Castle acted in concert to depress AT&T's reimbursement prices to the developers, but Old Castle was very clear that it would not agree to collaborate in this concerted reimbursement depression unless AT&T in exchange agreed to force all of the customers to buy the products only from Old Castle. So Old Castle and AT&T got together and said, the cost of this, I don't know, are you talking about predatory pricing, is this below-cost pricing? No, Your Honor. We'll leave that to one side then. They're saying, let's set the cost to AT&T at $8,000, but we won't agree to sell to Wombat developers at $8,000. We'll sell whatever we can get. And AT&T says, that's fine with us. We're only going to pay $8,000 to Wombat when they put it in, right? How does that hurt Jensen? Don't they have to compete with everybody else to sell the vaults? What happened, Your Honor, is precise. I think we've established the first part of the AT&T-Old Castle arrangement, but not the second part. The first part was that AT&T and Old Castle agreed that Old Castle would give a price list to AT&T that would set AT&T's current cost for AT&T vaults, and this price list was artificially low. That allowed AT&T to say to developers, this is our current cost for the vaults, and this is all that we're going to pay you. Well, isn't that the price that Old Castle charged in selling to AT&T directly? On the rare occasions when it made sales directly. And the district court indicated the expectation was that that's how the sales were going to be made. And the district court initially quoted the e-mail from Mike Scott, and it's an e-mail that I can quote aloud because the district court declassified it, in which he said, we've been rewarded with sole supplier status because we've given these low prices directly to AT&T. We sell at these low prices directly to AT&T 5 to 10 percent of the time, and we can sell at profitable market prices to developers 90 to 95 percent of the time. There's a second part of the equation, which is that Old Castle was unwilling to give this price list to AT&T unless AT&T agreed in exchange to force all the developers to buy only from Old Castle. That was the quid quid pro. Old Castle said, we will abet this concerted manipulation to depress the reimbursement prices, but only if you will abet us in excluding all of our competitors from making sales. And all developers could say, we won't buy from Old Castle and install the vaults ourselves. We want you, Mr. AT&T, to do so. And you'd have to do, and AT&T would have to do so, correct? Theoretically, that was an option, but our econometric statistics conclusively demonstrate that it wasn't a meaningful option because the real price wasn't a profitable option. There's even deposition testimony that is quoted by our expert. The defendants didn't raise this point when moving for a summary judgment a second time, or I would have quoted the deposition testimony directly, but it does appear in an expert report in the excerpts of record. And the deposition testimony is that AT&T schedules these matters so that the developer has to dig a trench, place the materials in the trench, including the AT&T vaults, and have AT&T come out and inspect the trench. In fact, this is also in the testimony of Melissa Stanton, who was AT&T in the deposition testimony of Melissa Stanton and Robert Nelisco, both 30B6 witnesses who testified on these points. And AT&T comes out and inspects the trench to make certain that everything's in order. If the developers ask that AT&T perform the installation, AT&T does it according to its own calendar, and it often requires the developers to literally have to reopen the road and have AT&T come in and do the work. And Robert Nelisco stated in his testimony that the developers recognize that that's going to delay the completion of their development. Unacceptably, it will delay their obtaining certificates of occupancy and approval to proceed with the construction. We're talking principally about major land developments that cost millions and millions of dollars, and a developer's not going to halt the development over a dispute at which what is at stake is perhaps $1,000. But this happened systematically from late 2002 until six days after we brought suit. And cumulatively, our expert economist analyzed half of the sales and found that the overcharges that the developers paid was approximately $2 million, either $1.8 million or $2.2 million, depending on the methodology used. And the reason for the inexactitude was that we did not get clear figures from the defendants. What's the injury to your client? Much greater. Thank you. Jensen was completely excluded from making sales of AT&T vaults in California and later in Nevada. But also AT&T can deal with whom it wishes, and it can specify from whom the product is purchased. I agree. So I'm having trouble. This may be a problem with regulators, and I think it might be a very bad practice. But I don't – I'm trying to get my mind around an antitrust injury. Thank you. The question is not whether or not AT&T can purchase from whom it wishes, but whether or not AT&T and Old Castle can force independent property developers to purchase only from Old Castle. Well, why should AT&T pay more than it would have to otherwise? You just explained that the reason that the initial understanding didn't work is that it's expensive for property developers to wait for AT&T's schedule. But that's not AT&T's problem. AT&T says, well, we can buy these cheap because we buy a lot of them, and we have this price from Old Castle. That's all we plan to reimburse. Now, if you developer want to go forward on your schedule, that's your business, but we're not going to pay any more than we have to pay. That makes perfect sense from AT&T's perspective. Why shouldn't it be entitled to get the cheap price it can get? I believe that if we had had a trial, then the defendants could put on the record that the way the markets work is as follows. We really have two different markets, one in which property developers buy AT&T vaults, and they've not been harmed because Old Castle, the compulsory seller in these markets, charged prices that they would have paid anyway. And then there's a second market in which property developers purchase landline connections by providing materials at a loss. That's their current characterization of the markets. See, but my concern is a little different because I don't see how your client enters into this at all. Your client isn't able to sell because it didn't get the low bid with AT&T. How is it that your client can profess to have an antitrust injury coming out of this? I think that raises the very question, Your Honor, and if I may quote from that case. The issue is that AT&T was not the purchaser. The property developers were the purchasers, and AT&T and Old Castle acted in concert to force these purchasers to buy only from Old Castle. But couldn't Jensen have bid Old Castle's price or below Old Castle's price and ended up in Old Castle's position with AT&T? Yes, but because we're not talking about sales directly to AT&T. It wouldn't have made any difference. We'll give you a price list, a Jensen price list, which is a dime cheaper than Old Castle's, and on condition that you make us sole source and we can sell at whatever price we want to to the developers. In other words, why couldn't Jensen have taken Old Castle's position flat out if they wanted to lower the price? I respectfully submit that that agreement was illegal, that AT&T and Old Castle— Was that the reason that Jensen didn't do it, or was it the reason they weren't going to make any money out of the deal? I don't know the answer to that. There's nothing in the record on that, but I believe— Is there anything in the record that Jensen didn't make that bid because they thought the contract would be illegal? The clear understanding Jensen had was that the bid— We're talking about a motion of summary judgment. Is there an affidavit from Jensen saying, we would have entered into the same deal that Old Castle did except that we had counsel telling us that that was illegal? Actually, the president of Jensen, Anthony Shanks, submitted a declaration in which he said AT&T, in the declaration, he said AT&T's negotiators suggested that if we make a low bid, it will be business as usual. And Mr. Shanks chose not to pursue that line of negotiation. He wasn't sure what it meant, but he didn't want to pursue it. He was uncomfortable with it. Did he say that he wouldn't enter into the contract because he considered that to be an antitrust violation? No. All right. No, Your Honor. The negotiations supposedly were for direct sales. What actually happened, though, is that for a two-year period, AT&T was unable to find a bidder that would give it the prices it wanted. Finally, after two years of negotiations, or 18 months of negotiations, Old Castle and AT&T made an agreement under which Old Castle gave this very low price list. There was an unwritten agreement made on the same day by which AT&T agreed to force all the developers to buy from Old Castle, but at uncontrolled prices. And that's Jensen's claim, that AT&T and Old Castle forced this independent pool of purchasers to buy only from one supplier. And there's case law that says one form of antitrust injury is coercive activity that prevents its victims from making free choices between market alternatives. That's originally from the Associated Contractors case, and it's been taken up by this circuit in Amarillo and in Glen Holly. Are you proposing to have to convince us that AT&T cannot specify a sole source? That's not AT&T can certainly decide itself. We wish to purchase only from this source. We will send our ---- No. AT&T can say whether we do so directly or indirectly through developers, we want our wires to go through Old Castle vaults, period. If it's willing to treat the developers as its purchasing agents and reimburse the developers for the cost or oblige the supplier to sell ---- We'll get back to where we were before. Okay. I don't know if I have time for rebuttal. Okay. You used your time up. We'll give you one minute. Okay. Thank you, Your Honor. And I did want to answer one question you had. Well, if you use your minute now, you're going to have fewer seconds left, so. Thank you, Your Honor. Judge Clifton, and may it please the Court, my name is ---- You need to raise the mic a little bit. You're tall. Judge Clifton, and may it please the Court, my name is Aaron Panner. I represent Defendant AT&T. I'm arguing today on behalf of both of the defendants, and I'm joined at council table by Janine Scancarelli of Crowell & Mooring, counsel for Old Castle. The district court properly granted summary judgment on two independent grounds. The first related to the absence of harm ---- of evidence of harm to competition. Old ---- Jensen was quite emphatic before the district court that there was no evidence that Old Castle had charged super competitive prices when it sold its vaults to developers. And the second is the issue that I think the Court has been focused on this morning, which is the absence of antitrust injury to Jensen. Exactly, Your Honor. Jensen insisted that the only antitrust harm in the case was AT&T's alleged failure to pay developers full reimbursement for the vault that they purchased. And on that theory, they suffered no injury. Their loss of sales had nothing to do with whether developers were fully reimbursed. And, in fact, Jensen argued that developers suffered the same injury on those occasions when Jensen did sell the vaults. And at the same time, if developers had been fully reimbursed ---- Are you representing to me that the record shows that when Jensen did sell to developers before Old Castle became a single source, they were doing the same thing that Old Castle was doing? Actually, Your Honor, the argument I'm referring to is that Jensen continued to make some sales after the period of the exclusive contract, the exclusive source agreement that's at issue in the case. Jensen did, in certain circumstances, continue to sell to developers. And Jensen's argument was ---- Did AT&T accept the Jensen vaults? In certain circumstances, that would occur as a result of, you know, particular circumstances and individual developments. I should say that the record reflects that Jensen did make sales of these vaults before the period at issue here, and the design didn't change. So they were ---- continue to be capable of constructing. And when Jensen made those sales, did they insist that AT&T reimburse the developers the full cost or just the priceless cost which Jensen gave AT&T? Well, Jensen wouldn't have had a priceless at that point. But the ---- what the record reflects in the argument of Jensen, at least, is that in those instances where Jensen made the sales, the market prices would have been equivalent to those that were charged by Old Castle, and the reimbursement would have been made on the same basis according ---- again, this is Jensen's argument. I think it helps to underline the absence of harm to Jensen from the supposed antitrust evils. So Jensen sold to developer and charged, say, developer 10, and then along came AT&T and reimbursed developer 8 based on its Old Castle pricelist because it didn't have a pricelist in Jensen, true? Approximately true, Your Honor, and true enough for purposes. I think that that was an accurate statement of what Plaintiff's argument was below. I think that the district court opinion does summarize the conflicting evidence with respect to the manner in which reimbursement was, in fact, calculated. But for purposes of the district court's decision and understanding the absence of antitrust injury to Jensen here, I think that's a fair account of Plaintiff's argument. And I think that one can, by the same token, looking at the other side of the coin, if developers had been, on Jensen's theory, fully reimbursed, there would have been no antitrust harm. And yet Jensen would have made no more sales than it did because it had not qualified as an approved supplier. Well, the theory there, if there is full reimbursement, then AT&T isn't using whatever market power it has to benefit itself, because it's paying out to the developers the actual price. The argument, as I understand it, is that AT&T is taking advantage of the agreement it has with Old Castle to save itself some money, because it's only paying out the list price given to it by Old Castle. I think that is the theory, Your Honor, and I — and it's legally untenable. And let me try to — I think that Your Honor actually — Your Honor's question, I think, points to the reason why, which is to say that there are two separate markets here. Jensen had always argued that the market that they were — in which they had to show harm was the market for sale of precast vaults to developers. And they were unable to show any evidence of an impact on the developers from purchasing vaults from Old Castle. There was no evidence of super competitive prices. By contrast, any under-reimbursement relates to the terms that are negotiated between AT&T and developers for the extension of service to the new developments. And in that transaction, AT&T has a certain market position, which allows it to reach a certain deal with the developers, a deal certainly reached in the shadow of regulatory obligations to construct line extensions on its own. And indeed, there may be an issue potentially regarding the regulatory requirements that AT&T faces. Judge Fletcher, you made reference to the regulatory issue, and I believe there may be something pending before the CPUC with respect to that. But for purposes of the antitrust claim and putting regulation to one side, there chooses to extend service to a new development. And this is simply one term in the agreement that is reached between AT&T and developers. And it really has nothing to do with competitive conditions in the market for vaults and has nothing to do with any fact of injury suffered by Jensen. Unless the Court has further questions. I hear none. Thank you, Your Honor. Thank you for your argument, and we give Jensen, Mr. Markham, a minute. Thank you, Your Honor. Very briefly, there is direct evidence of a price elevation that Old Castle imposed, and that's in there are a series of declarations that we submitted by Nevada contractors. Direct evidence of what again, price? That the Nevada contractors had to pay unreimbursed delivery charters because they were forced to buy from Old Castle. And that appears in paragraphs 5 and 6 of the declarations that we submitted from Nevada contractors. You say that is a reasonable issue of fact as to whether the prices were supercompetitive? Yes. Secondly, very quickly, the essential antitrust violation as to Jensen is that Jensen was selling to an independent pool of purchasers. AT&T and Old Castle acted together to force this group of purchasers to buy only from Old Castle. That was the concession given to Old Castle in exchange for which Old Castle gave this fraudulent price list to AT&T so that AT&T could then depress its reimbursement prices to the developers. It's a little complicated, but there are really two egregious antitrust abuses that one made in exchange for the other. Thank you, Your Honor. Thank you. We thank both counsel for the argument. The case just argued is submitted. That concludes our calendar for the morning, and we are adjourned.
judges: Fletcher B. , Clifton, Bea